# UNITED STATES DISTRICT COURT
## DISTRICT OF MASSACHUSETTS

BARBARA WOODS

CIVIL ACTION NO.04-30010-KPN

Plaintiff

PRO-SE Plaintiff appeal
To defendants motion
To dismiss

Vs.

BAYSTATE HEALTH SYSTEMS,
TODD BAILEY TIM CULHANE
And ELIZABETH BLANEY

Defendants.

The defendants moves to have the following claims dismissed

(1) First Amendment (2) 14th Amendment due process of law

(2) Libel, Slander Defamation: (4) Intentional Tort.

Now here comes the Pro-Se Plaintiff appeal to the courts that

The above mentioned claims should stand the test of law.

Argument 1st Amendment
& 14th Amendment

The First Amendment guarantees rights of freedom of

Expression the most basic right is freedom of speech which

Allows persons to express themselves without restraint

From government. The 14th Amendment guarantees rights

Of freedom of liberty due process, enjoyment that no one

Should be deprived of these rights, Baystate as a non-profit

Corporation should be held to a higher standard than a

Convenience store. If it is reasonable to suggest that

To the courts that a tie must exist between the Defendant

And our Government to gain protections under the law

I will proceed to move forward on that premise. Baystate

Has received in a certain year over 13,103,316 in awards.

Please refer to Exhibit (A).

Herein I will proceed with humbleness before the court

And respect. I ask the court to allow this case to set

Precedent. The facts will show that I was forced to

Numerous 11th hour meeting with management, and

Interrogated. Please refer to exhibits 1-4. I was engaged

In a conversation with management and expressed and

Exercised my rights of freedom of expression, freedom

Of speech. I responded truthfully to and informed

Management that I had a prior commitment in the

Morning, I was given no notice to make arrangements

Nor was I given any direct order that implied I would

Be written up for alleged insubordination and ultimately

Dismissed for this alleged charge. In Pickering v Board

Of Education 391 U.S. 563 the courts have concluded

In more general terms that statements made by public

Officials on matters of public concern must be afforded

The protections of the first Amendment despite the fact

They are directed at their superiors. The court regarded the

Teacher as a member of the general public, as we all are.

As a member of the general public am I afforded my

Constitutional right as other persons. The courts also

Stated that it is apparent that the threat of dismissal

From his employment is nonetheless a potent means

Of inhibiting speech and also stated that Pickering

Exercised his right to speak. The courts have concluded

A persons right to speak and furthermore he cannot

Be dismissed for using that right.

In conclusion I humbly ask the courts do I have these

Rights  I respectfully believe that I do. I beseech the courts

To allow me to exert my constitutional right to answer the

Question ask of me in those meetings, and allow the claims

To stand.

My conversation of free speech was inhibited and used

As a diabolical devise to separate me from my enjoyment

Of liberty. If I may proceed further and ask the courts

How is it that a not- for profit corporation appears to

Have the authority to suggest how one must think and

Exercise their right of freedom of speech. Please refer

To Exhibits I humbly submit this appeal to the court.


Respectfully Submitted

_Barbara Wall_
732-2924
33 Granville ST. Sp Fld, Mass 01105

Baystate
Health **online**
System

*Exhibit*
*H*

**Baystate Health System**

Search

Clinical Research

Clinical Trials

Department
Research Interests

Grants & Contracts

Institutional Review
Board

Publications

Research Office
Personnel

Baystate Health
System - HOME

Education/Research

Library

# Grants and Contracts
at Baystate Medical Center

Each year, Baystate Medical Center (BMC) is the recipient of numerous grant and contract awards from public and private sources. During FY 2002 BMC received 152 awards totaling 13,103,316. These awards are mix of cost reimbursement and capitated (per patient or per event) payment grants and contracts. The Medical Research Office is currently following 400+ different study cost centers.

Management of these grants and contracts requires the concerted efforts of many people in many different areas of BMC. These internal management structures are routinely reviewed and audited by internal auditors and an external independent public accounting firm, including the annual federal audits required under OMB Circular A-133.

## Summary Listing of Awards at Baystate Medical Center

Fiscal Year 2001

Fiscal Year 2002

## Fiscal Year 2002 Departmental Grants and Contracts

Administration

Alcohol & Drug Services

Ambulatory Care

Emergency Medicine

Medicine

Obstetrics/Gynecology

Other BHS Entities

Pathology

Pediatrics

Psychiatry

11-27-02

Exhibit 1-4

This is to document a meeting that took place between Burt Alves, Barbara Woods and me. The reason for calling the meeting was to have Barbara sign off on training documents and some suggestions for her further development within the BHS system. She read, agreed with and signed the docs concerning the level of cleaning she has been taught to this point.

When she read the section regarding some ongoing development issues that I thought she needed to work on she stated that I was "trying to trick her to sign something" and that she believed should not have been documented. She refused to sign this and another document that referred to an agreement that was reached concerning a statement that was made without any ill intent by another custodian while in her presence about her brother. Before that particular meeting between Barbara, the custodian who made the comment, a lead custodian and I adjourned that morning of 11-21-02 an agreement had been reached between the 2 parties that an apology had been given and that the matter had been resolved. She stated that the wording was not accurate and again said she would not sign.

When speaking of the aforementioned "ongoing development issues" I was referring to individual encounters Barbara has had with her fellow peers who have been training her on all aspects of her duties. She has not been accepting her training from her peers well. The first night (Sun. the 24th) of her ongoing training in the Emergency Dept. when approached by a fellow custodian who let her know that where she was sitting in the E.D. was not an area that was allowed for people in our dept. to be, Barbara responded by saying "I heard you but, it is none of your business where I sit" the custodian replied "that if anyone had told me that I couldn't sit in this area that I would say I didn't know and was sorry". Barbara's response was "Oh well, that's just you".

This encounter with Barbara disturbed that custodian so bad that she broke down in tears and having worked together for a matter of only 4 hours.

In our meeting that morning, when I brought this issue to Barbara's attention she said that she couldn't comment on that matter and that she had to leave.

When I told her of the severity of this matter and that she should take 2 minutes to explain her side of the story she stated at that point she felt that I was harassing her and turned to Burt and said "Do you feel that I would do something like that" Burt immediately said that we would like her statement which I reiterated would be the best thing to do at this point she said "that

I'm not talking to you, I'm talking to Burt". I let her know at that point that I was her direct report supervisor and that I have every right to ask her questions. She then proceeded to ignore all responses from me and stood up and walked out of Burt's office.

She came back down the hall 30 seconds later and said that she was going to take this matter to a outside source which she said the name so fast that neither Burt nor I caught the name.

Todd Bailey

*11-21-02 met w/her* 1-4 *EXHBT* (b)

On 10-23-02, a comment was made by the custodian (Don Potter) who was training her when he saw her brother pass by (Dan Woods) that "here comes your ugly brother's mug" and was taken offensively by Barbara. This matter has been discussed at length by all parties involved and has come to the conclusion that the issue has been resolved.

Sincerely,

*T. Bailey*

Todd Bailey
E.S. Supervisor

*Don't agree with Barbara*

Exhibit 1-4 (4)

11-24-02

During the 1st night of training in the Emergency Dept., Barbara was approached a fellow custodian who let her know that where she was sitting in the E.D. was not an area that was allowed for people in our dept. to be, Barbara responded by saying "I heard you but, it is none of your business where I sit" and when the other custodian replied back "that if anyone had told me that I couldn't sit in this area that I would say I didn't know and was sorry". Barbara's response was "Oh well, that's just you".

When told of the severity of this matter and that she should take a couple of minutes to explain her actions she stated at that point that she felt that I was harassing her and turned to Burt Alves who was present at this meeting and said "do you feel that I would do something like that" Burt immediately replied that we would like her statement which I then reiterated would be the best thing to do at this point Barbara said "I'm not talking to you, I'm talking to Burt. At this point, Barbara wasn't getting the answer from Burt either that she wanted and proceeded to walk out of Burt's office.

Sincerely,

Todd Bailey


12/3/02

Barbara does not agree. She is not willing to make statement of change

11-24-02

During the 1ˢᵗ night of training in the Emergency Dept., Barbara was approached a fellow custodian who let her know that where she was sitting in the E.D. was not an area that was allowed for people in our dept. to be, Barbara responded by saying "I heard you but, it is none of your business where I sit" and when the other custodian replied back "that if anyone had told me that I couldn't sit in this area that I would say I didn't know and was sorry". Barbara's response was "Oh well, that's just you".

When told of the severity of this matter and that she should take a couple of minutes to explain her actions she stated at that point that she felt that I was harassing her and turned to Burt Alves who was present at this meeting and said "do you feel that I would do something like that" Burt immediately replied that we would like her statement which I then reiterated would be the best thing to do at this point Barbara said "I'm not talking to you, I'm talking to Burt. At this point, Barbara wasn't getting the answer from Burt either that she wanted and proceeded to walk out of Burt's office.

Sincerely,

Todd Bailey

12/5/02

Barbara does not agree. She is not willing to make statement of chang

ExhibiT (B)
1-4

BAYSTATE HEALTH SYSTEM, INC.

## DISCIPLINARY NOTICE

Employee
Name: ___Barbara Woods___   Dept: ___Env Svc___   Supervisor: ___Todd Bailey___

Position/Job Classification: ___Custodian___   Date Employed: ___10/21/02___   Today's Date: ___11/27/02___

Employee Number: ___45895___

Rule(s) violated (refer to the specific Baystate Health System, departmental policy and/or procedure, or supervisory directive):

___P-8-b 2e: Insubordinate attitude (e.g. lack of cooperation or collaboration)___

Details of violation explaining as specifically & comprehensively at possible (*use attachment if necessary*):

On:
11/24/02
Date of incident

___while being trained in the Emergency Department, you were advised by a fellow custodian that where you were sitting was in inappropriate location. You reply back to that custodian was a non-collaborative remark and deemed to be insubordinate.___

___When you were brought in to discuss this matter with your supervisors, Burt Alves and Todd Bailey, you were insubordinate with Todd. This type of action will not be condoned. Further violations of this policy will be treated with progressive disciplinary action, up to and including termination of employment. Your introductory period should last at three months. Where approriate, weakness in performance, behavior, or development should be brought to your attention for correction. Please see attached form.___

Action to be taken:   (1) __XX__ Verbal Counseling*   (3) _____ Final Written Warning**
(2) _____ Written Warning   (4) _____ Discharge

*Completion of this form for a verbal counseling shall serve as documentation <u>only</u> and should <u>not</u> be filed in the employee's official personnel file.
**Final written warning may be either the last in a series of warnings or the initial warning for a severe work rule infraction.

*"A copy of this warning was personally reviewed and delivered to the above named employee by:"*

Supervisor: *Tracy Mally* Date: 12/3/08

If employee refuses to sign and/or accept a copy of this form:
*"I certify this disciplinary action was reviewed with the employee named in this action and the employee refuses to sign and/or accept a copy of this form"*

*"I have received and read this notice. I have been informed that a copy of this notice will be placed in my official personnel file. Further, I have been informed of my right to grieve a written warning within 10 working days and discharge within 3 working days:"*
Employee: *Refused to sign*

Date: 12-3-02
Supervisor

**White Copy:** Human Resources **Yellow Copy:** Department Head **Pink Copy:** Employee **Gold Copy:** Employee Relations
#010300
08/01/99