UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

BARBARA WOODS,

                    Plaintiff,

vs.

BAYSTATE HEALTH SYSTEM,

                    Defendant.

CIVIL ACTION NO. 04-30010-KPN

**DEFENDANT'S MEMORANDUM OF
LAW IN SUPPORT OF MOTION FOR
SUMMARY JUDGMENT**

## I. Introduction

On December 9, 2002, Defendant, Baystate Medical Center notified Plaintiff,

Barbara Woods, that her probationary employment with Defendant was being

terminated.  The probationary period, as accurately described by Plaintiff, is a time

when "you do your best and hopefully they hire you".  Seemingly, Plaintiff, who is black,

had good attendance during her probationary period.  Beyond that, however, Plaintiff's

performance during this trial period was an unmitigated disaster, and was of a caliber

that virtually no employer, having seen her "do her best", would have extended an offer

of regular employment.[1]

Most glaringly, Plaintiff had shown an inability to get along with her co-workers,

including those assigned to train her, and the very supervisor, Todd Bailey, who had

decided to hire her.  During the six weeks of her "trial" employment, the tone and

demeanor of her interactions with incumbent co-workers had resulted in co-workers not

---

[1]The Defendant has submitted a Detailed Statement of Undisputed Fact that sets forth, in considerable detail, its perceptions relating to the deficiencies of Plaintiff's performance during her probationary period and the reasons for its decision.

wanting to deal with her, and was so extreme that it had reduced no fewer than three employees to tears.  Since the three individuals reduced to tears including the group leader, were all black employees there was, as is, no reason to believe Plaintiff's inability to get along with her co-workers was related to her race.[2]

Moreover, the feedback provided to management during her brief probationary period was that Plaintiff would not take directions or guidance regarding how to perform her job, or the policies of the hospital.  Registered Nurses in the Operating Room where Plaintiff was assigned sent her manager a three page handwritten memo complaining about Plaintiff's work performance, her refusal to follow directions pertinent to maintaining a sterile environment in the OR, and her general rudeness.

Whenever confronted with these issues the Plaintiff rejected personal responsibility for any of these problems, choosing instead to respond by verbally assailing her co-workers, group leader and/or manager.  Having essentially "run out" of third shift custodians willing to train Plaintiff in the Operating Room, the management of the Environmental Services Department decided to have her trained in the Emergency Department.  Within hours of beginning training on that shift, Plaintiff had another run in with yet another custodian, Annette Harris, also a black employee.

Harris, seeing Plaintiff sitting in an area custodians were not supposed to be seated, informed her of such.  Plaintiff, it is undisputed, told her to "mind her own business".  When Harris indicated that if she had had been so informed by an

---

[2]At a prior employment, Plaintiff's "relationship" with an incumbent employee assigned to train her had, according to Plaintiff, resulted in an episode where the co-worker had wanted to engage in fisticuffs.  Defendant is pleased that none of its incumbent employees responded in a similar manner.  Plaintiff V. 2, pp. 17-22.

incumbent employee she would have indicated she wasn't aware of the policy, and apologized for sitting in an inappropriate area, Plaintiff responded with a demeaning comment that further upset Harris, prompting Harris to report the incident to her group leader.  When Bailey subsequently attempted to ascertain Plaintiff's side of the confrontation Plaintiff, allegedly because she believed (erroneously) that Bailey was no longer her supervisor, refused to answer his questions, holding up her hand and telling Bailey she was not talking to him, but only to Burt Alves, another supervisor who she perceived to be her new supervisor.  She then left the meeting without justification.  Not long thereafter, Bailey, in conjunction with his own supervisor, determined that there was no reason to continue Plaintiff's probationary employment, and she was so notified.

Plaintiff brings a claim of discrimination under Title VII, 42 U.S.C. § 2000, *et. seq*. and M.G.L. c. 151B.[3]  Defendant moves for Summary Judgment and contends that this case presents what the First Circuit Court, in a recent case affirming the award of summary judgment in an A.D.E.A. action, called "the most familiar of issues on summary judgment:  whether resolving reasonable doubts in his favor, the evidence so far could rationally support a jury verdict for the plaintiff.  *See*, Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 249, 106 S. Ct. 2505, 91 L.Ed.2d 202 (1986)."  Joyal v. Hasbro, 380 F.3d 14 (1st Cir. 2004).

---

[3]As discussed below, it is not entirely clear whether the claim is premised on unlawful retaliation or race.  Neither can be supported.  To the extent the Complaint can be construed to allege sex discrimination, it is barred because no such claim was ever presented to the EEOC or the MCAD.  Lattimore v. Polaroid Corp., 99 F.3d 456, 464 (1st Cir. 1996) ("Even a pro se complainant is required to describe the essential nature of the claim and to identify the core facts on which it rests.");  Chatman v. Gentle Dental Center of Waltham, 973 F. Supp. 228, 233 (1997); Bonilla v. Muebles J.J. Alverez, Inc., 194 F.3d 275, 278 (1st Cir. 1999); Charland v. Muzi Motors, Inc., 417 Mass. 580, 583 (1994).  In any event, a gender discrimination claim

3

Plaintiff will not be able to even establish a *prima facie* case of discrimination. Thus, to the extent that her claim is for race discrimination, she will not be able to establish that she was performing her job to her employer's satisfaction.  To the extent her claim is based on retaliation, Plaintiff has not engaged in protected activity, and assuming she had, that there is no evidence of a causal relationship between such alleged protected activity and her subsequent termination.  Moreover, even if the court determines or assumes that she will be able to establish a *prima facie* case, she will not be able to point to facts that would allow her to ultimately prevail.  Thus, there is no evidence from which a reasonable jury could conclude that the employer's asserted reasons for not offering Plaintiff regular employment are a mere pretext, and that Plaintiff was the victim of unlawful employment discrimination.

Nor can Plaintiff's defamation claim, based on a complaint *received* by BMC survive.  Thus, Defendant is not liable for a complaint submitted to it, barring evidence that it was subsequently excessively published by Defendant.  Moreover, the written complaint reflects opinion and is thus not libelous.  In any event, the Operating Room RNs and the Environmental Department Managers have a common interest in the performance of the custodians assigned to the area, and dialogue on that topic, absent excessive publication, cannot serve as the basis of a defamation claim.

---

would be subject to a Motion for Summary Judgment for the same reasons as the Plaintiff's race discrimination claim.

## II.  The Discrimination Claims

### A.  Denial of Summary Judgment Here Requires Plaintiff to Point to Evidence, that would Allow A Reasonable Jury to Find Discriminatory Conduct

The Statement of Undisputed Facts sets forth, in considerable detail, the reasons why it terminated Plaintiff during her trial period; including the reports from numerous sources regarding Plaintiff's shortcomings during her trial period.  Ultimately, even assuming arguendo a *prima facie* case, in determining whether there is a triable issue, the issue is not whether there is a dispute as to whether or not the employee agrees with the employer's assessment of her performance, behavior and culpability, or even if the employer was in fact correct in its assessment that Plaintiff was simply a bad employee who, in addition to being belligerent with co-workers and supervisors, was resistant to accepting instructions.  Rather, the issue is whether BMC believed its own assessment, or more specifically, is there evidence that BMC did not actually believe its assessment.  *See, e.g.,* Joyal v. Hasbro, Inc., 380 F.3d 14 (1st Cir. 2004) ("Whether Hasbro was fair or wise does not matter to this claim, nor does it matter whether Wilson was right in perceiving Joyal as a harsh manager and one who could not give up a grudge; it is enough that Wilson so believed  . . . Joyal has pointed to nothing that would entitle a jury to find that Hasbro disbelieved the reasons it gave or otherwise based its decision upon Joyal's age.").  *See, also*, Ruiz v. Posadas de San Juan Assocs., 124 F.3d 243, 248 (1st Cir. 1997).

In the instant case, there is no real question[4] but that during Plaintiff's probationary period she was involved in a series of confrontations with co-workers and group leader, which were either reported to or observed by management. The fact that her interactions with group leader Plummer and co-workers Harris and Gamble reduced each to tears is not in dispute. There is no dispute that management received numerous complaints about this newly hired employee's failure to accept direction. There is no real dispute that she acted disrespectfully to Todd Bailey, the manager who had hired her, when he met with her to investigate her conduct with another employee. Indeed, Plaintiff doesn't deny the existence of these confrontations, or much of her conduct. She only disputes her culpability, faulting others and claiming that she was, seemingly contrary to everyone else's opinion, a good employee. However, a Plaintiff's personal belief that she was a good employee, performing well, is simply insufficient to create a triable issue on the matter.

Thus, in <u>Shorette v. Rite Aid of Maine, Inc.</u>, 155 F.3d 8, 15 (1st Cir. 1998), the defendant employer asserted that it acted because it believed the employee lacked sufficient computer skills, a claim disputed by the terminated employee. Rejecting the Plaintiff's claims that there was a triable issue, the Court stated:

> Although Shorette disputed these assessments, his personal opinion regarding his own job qualifications is not sufficiently probative on the issue of pretext. *See*, <u>Holifield v. Reno</u>, 115 F.3d 1555, 1565 (11th Cir. 1997) ("The inquiry into pretext centers upon the employer's beliefs, and not the employee's own perceptions of his performance."); <u>Ost v. West Suburban Travelers Limousine,</u>

---

[4]In assessing the evidence, "minor quibbles are insufficient to create 'genuine issues of material fact' precluding summary judgment." <u>Mack v. Great Atl. & Pac. Tea Co., Inc.</u>, 871 F.2d 179, 181-82 (1st Cir. 1989); <u>Joyal v. Hasbro</u>, *supra*, 380 F.3d at 18 ("Without discussing each contention in detail, it is enough to say that Joyal's disagreements do not cast serious doubt on Hasbro's evidence as to what happened.")

Inc., 88 F.3d 435, 441 (7th Cir. 1996) ("It is well settled, however, that a plaintiff's own opinions about her work performance or qualifications do not sufficiently cast doubt on the legitimacy of her employer's proffered reasons for its employment actions."); Evans v. Technologies Applications & Serv. Co., 80 F.3d 954, 960-61 (4th Cir. 1996) ("'It is the perception of the decision maker which is relevant,' not the self-assessment of the plaintiff.") (citation omitted); Shapolia v. Los Alamos Nat'l Lab., 992 F.2d 1033, 1039 (10th Cir. 1993) (same). The record contains no evidence whatsoever that Rite Aid ever believed that Shorette had acquired adequate computer skills.

Cf., Benham v. Lenox Sav. Bank, 118 F. Supp.2d 132, 145 (D. Mass., 2000) ("… a plaintiff's mere personal disagreement with her employer's opinions about her job performance is not sufficiently probative to avoid summary judgment.). Thus, to warrant a trial the evidence would have to support a conclusion that Defendant actually believed that Plaintiff, a probationary employee, was performing at a level worthy of being offered regular employment, and that it terminated her nonetheless. This she will not be able to do.[5]

---

[5]In this regard, it is important to note that private employers are entitled to use probationary periods to weed out or eliminate undesirable or even borderline employees, and that a decision to not continue someone's employment is inherently distinct from a decision to terminate a regular employee. To effectuate this distinction, courts have consistently recognized that probationary employees are not, for purposes of discrimination cases, ever "similarly situated" to non-probationary employees. See, e.g., Ghane v. West, 148 F.3d 979, 982 (8th Cir. 1998) (in race and national origin discrimination, court held that the plaintiff's probationary status meant that he was not similarly situated, as a matter of law, to permanent employees with whom he compared himself). Accord, Blanding v. Pennsylvania State Police, 12 F.3d 1303, 1309-10 (3d Cir. 1993); Herr v. Airborne Freight Corp., 130 F.3d 359, 362 (8th Cir. 1997). Decisions of other courts are in agreement. See, e.g., Holbrook v. Reno, 196 F.3d 255, 262 (D.C. Cir. 1999); McKenna v. Weinberger, 729 F.2d 783, 789 (D.C. Cir. 1984) (a female probationary employee was not similarly situated to male permanent employees); Walker v. Runyon, 979 F. Supp. 1363, 1368 (D.Kan., 1997); Williams v. Cuomo, 961 F. Supp. 1241, 1245 (N.D.Ill., 1997) (where a black male was the only probationary employee, there were no similarly situated employees), aff'd, 151 F.3d 1035 (7th Cir. 1998), cert. denied, 525 U.S. 1160, 119 S. Ct. 1070, 143 L.Ed.2d 74 (1999).

To show disparate treatment, Plaintiff would have the burden of pointing to other probationary employees about whom the same level of complaints were made during the probationary period but who were nevertheless retained. Dartmouth Review v. Dartmouth College, 889 F.2d 13, 18 (1st Cir. 1989); Matthews v. Ocean Spray Cranberries, Inc., 426 Mass. 122, 129-130 (1997) (citations omitted). In the instant case, not only can Plaintiff not meet this

In assessing the summary judgment materials, Defendant recognizes that the court must view all the evidence in the light most favorable to the nonmoving party, "drawing all reasonable inferences in that party's favor."  Thomas v. Eastman Kodak Co., 183 F.3d 38, 42 (1st Cir. 1999).  Nevertheless, to defeat a properly supported motion for summary judgment there must be evidence that would permit a rational factfinder to return a verdict in Plaintiff's favor "'without resorting to conclusory allegations, improbable inferences, and unsupported speculation,' Medina-Munoz v. R.J. Reynolds Tobacco Co., 896 F.2d 5, 8 (1st Cir. 1990); Shorette v. Rite Aid of Maine, Inc., 155 F.3d 8, 12 (1st Cir. 1998); Matthews v. Ocean Spray Cranberries, Inc., 426 Mass. 122, 129-130 (1997).  See, also, Conward v. Cambridge Sch. Comm., 171 F.3d 12, 18 (1st Cir. 1999) (refusing, on motion for summary judgment, "to indulge rank speculation or unsupportable hyperbole"); Finney v. Madico, Inc., 42 Mass. App. Ct. 46, 49, 674 N.E.2d 655 (1997) ("to defeat a summary judgment motion the asserted conflict "must be genuine, i.e., the proponent cannot establish it by simply saying so or adducing only evidence from which a factfinder could not reasonably infer unlawful discrimination.")"

Since Defendant has clearly produced evidence of a lawful reason for its actions, to avoid summary judgment the totality of the evidence must be sufficient to support a finding that there was actual discrimination.  Zapata-Matos v. Reckitt & Colman, Inc., f/k/a L & F Products, 277 F.3d 40, 45 (1st Cir. 2002); Lipchitz v. Raytheon Company,

---

burden, the Defendant's Statement's have affirmatively stated that, at least insofar as these managers were concerned, the level of problems it had experienced with this probationary employee was unprecedented.

434 Mass. 493, 505, 751 N.E.2d 360 (2001) (in order for the alleged victim of discrimination to prevail, the factfinder must determine that the facts warrant a finding that "the employee has satisfied her ultimate burden of proving that the decision was made "*because of*" the unlawful discrimination as G.L. Ch. 151B, § 4(1), requires; Weber v. Community Teamwork, Inc., 434 Mass. 761, 775, 752 N.E.2d 700 (2001); Lewis v. City of Boston, 321 F.3d 207 (1st Cir. 2003).

B.  The Plaintiff Cannot Establish Even A *Prima Facie* Case

Under both Title VII and M.G.L. c. 151B Plaintiff has the initial burden of establishing a *prima facie* case of discrimination; and doing so creates a presumption of discrimination.  McDonnell Douglas Corp. v. Green, 411 U.S. 792, 802, 93 S. Ct. 1817, 36 L.Ed.2d 668 (1973); Abramian v. President & Fellows of Harvard College, 432 Mass. 107, 116, 731 N.E.2d 1075 (2000).  "The purpose of the *prima facie* case is to identify those circumstances where the employer's actions, if left unexplained, are more likely than not based on unlawful discrimination."  Lewis v. City of Boston, 321 F.3d 207, 216 (1st Cir. 2003); Blare v. Husky Injection Molding Sys. Boston, Inc., 419 Mass. 437, 441, 646 N.E.2d 111 (1995).  Although generally not difficult to do, in the instant case Plaintiff cannot even establish a *prima facie* case of discrimination.

The exact parameters of a *prima facie* case are not formulaic but flexible, depending on the nature of the case.  Dichner v. Liberty Travel, 141 F.3d 24, 30 (1st Cir. 1998); *See, also,* Labonte v. Hutchins & Wheeler, 424 Mass. 813, *821, 678 N.E.2d 853, 859 (Mass., 1997) ("Massachusetts has adopted a flexible approach to this framework, acknowledging that "the facts necessary to establish a *prima facie* case of discrimination will vary depending on [the] situation."  Beal v. Board of Selectmen of

9

Hingham, 419 Mass. 535, 544, 646 N.E.2d 131 (1995).  In light of its purpose, in determining whether the Plaintiff has made out a *prima facie* case, the evidence must be sufficient to establish a "legally mandatory, rebuttable presumption" of discrimination. O'Connor v. Consolidated Coin Caterers Corp., 517 U.S. 308, 311-312, 116 S. Ct. 1307, 134 L.Ed.2d 433 (1996).  Whether a plaintiff has proffered evidence sufficient to establish a *prima facie* case is a question of law and depends on the specific facts of a case.  Knight v. Avon Products, 438 Mass. 413, 780 N.E.2d 1255 (2003).

To the extent that the Plaintiff's Complaint can be read as making a claim of race discrimination, to establish a *prima facie* case the plaintiff must show that she (1) was within a protected class; (2) met her employer's legitimate performance expectations; (3) was adversely affected; and (4) was replaced by another with similar skills and qualifications.  Thomas v. Eastman Kodak Co., 183 F.3d 38, 56 (1st Cir. 1999) *cert. denied*, 528 U.S. 1161, 120 S. Ct. 1174, 145 L.Ed.2d 1082 (2000).  Plaintiff can satisfy the first and third prong, and while there is no "evidence" the court may presume that she will be able to satisfy the fourth.  However, it is clear that she will not be able to prove the second prong.  Thus, save for her own impressions there is no basis to find that the Plaintiff, during her probationary period, was performing at a satisfactory level.[6] On the other hand, there is ample evidence that Plaintiff was difficult to deal with, was not accepting direction from her co-workers, and that she was being rude to her

_____

[6]There was evidence that on a single occasion Plummer told Plaintiff she had done a good job.  However, it was clear that this related only to a specific task, and did not reflect the lead person's assessment of her overall performance.  (Plummer 73-74)  Furthermore, simply because a low-level supervisor compliments an employee's performance does not mean that an issue of triable fact has been created whenever a higher-level supervisor subsequently gives that same employee a negative evaluation.  *See*, Abioye v. Sundstrand Corp., 164 F.3d 364,

manager and co-workers.  Under such circumstances she cannot establish a *prima facie* case of race discrimination.  *See, e.g.,* Pelton v. Green County Sheriff's Dept., 2001 WL 34377570, *3 (W.D.Wis., 2001) ("Defendant may legitimately expect plaintiff to accept direction without developing a negative attitude.  Taking the facts in the light most favorable to the non-moving party, I find that no reasonable factfinder could conclude that plaintiff was meeting defendant's legitimate expectations. . . .  [E]ven assuming the truth of plaintiff's allegations, for example, that she was watched more closely, was chosen for a "ride-along" selectively and was to be given an extended probation, these facts would not establish a *prima facie* case that she was discriminated on the basis of her sex.  In each instance, plaintiff compares herself to permanent employees.  By definition, probationary employees can be watched more closely, be expected to provide ride-alongs and be given extended probation.).

Nor can Plaintiff establish a *prima facie* case of retaliation.  To make out such a *prima facie* case, the Plaintiff would have to show that before her discharge she engaged in protected conduct, that she suffered some adverse action, and that "a causal connection existed between the protected conduct and the adverse action." Mole v. University of Massachusetts, 442 Mass. 582, 814 N.E.2d 329 (2004) *citing* Mesnick v. General Elec. Co., 950 F.2d 816, 827 (1st Cir. 1991), *cert. denied*, 504 U.S. 985, 112 S. Ct. 2965, 119 L.Ed.2d 586 (1992).  Plaintiff did not engage in protected

activity and cannot show a causal linkage between any alleged protected activity and her termination.

369 (7th Cir. 1998).

Thus, as the Supreme Judicial Court recently noted in <u>Mole v. University of Massachusetts</u>, *supra* at 814 N.E.2d 338 n. 13:

> …for purposes of a claim under G.L. c. 151B, § 4(4), a plaintiff has engaged in protected activity if "he has opposed any practices forbidden under this chapter or ... has filed a complaint, testified or assisted in any proceeding under [G.L. c. 151B, § 5]."  Under § 4(4A), protected activity consists of "aid[ing] or encourag[ing] any other person in the exercise or enjoyment of" any right under G.L. c. 151B.  With respect to a retaliation claim under Title VII, a person has engaged in protected activity if "he has opposed any practice made an unlawful employment practice by [Title VII], or ... has made a charge, testified, assisted, or participated in any manner in an investigation proceeding, or hearing under [Title VII]."  42 U.S.C. § 2000e-3(a).

Plaintiff here has engaged in no such activity.  Rather, she bases her claim of retaliation exclusively on a statement that was made by a co-worker, Don Potter, on her first night of employment, to the effect of "here comes your brother's ugly mug" or "here comes your ugly brother", which she repeatedly characterizes as a racial slur.  Defendant submits that, whatever Plaintiff's personal reactions to the co-worker's comments, and regardless of her personal *belief* that such a statement revealed prejudice by the co-worker (a co-worker who apparently has gotten along well within a diverse workforce), it is clear that Plaintiff engaged in no *conduct* that constitutes protected activity.  Being offended is not protected activity.

Thus, Plaintiff did not protest any purportedly unlawful conduct.  She did not file a complaint, testify, or assist in any proceedings at the MCAD or EEOC *prior* to the adverse employment action that is protested.  Accordingly, to establish that she warrants the protection of the anti-retaliation provisions there would have to be evidence that she engaged in a protest of an unlawful practice *by BMC*.

However, it is clear that the Plaintiff took no action, she merely believes that the

12

comment was racial.  The anti-retaliation provisions do not protect individuals simply

because they perceive that a co-worker is discriminatory, it protects employees who

*protest* discriminatory practices *by their employer*.  While the employee need not be

correct, there must, at a minimum, be a "good faith, reasonable belief that the

underlying challenged action violated the law."  Smith v. Eaton Corp., 195 F. Supp.2d

1079, 1098-1099 (N.D.Iowa 2002).  There is no showing that the Plaintiff, before her

termination, took action based on a belief that BMC had a discriminatory policy.[7]

In fact Plaintiff took no action; she merely formulated a belief that Potter, a co-worker,

was a racist.  The fact that Plaintiff may have believed that this single comment by this

co-worker, uttered on her first night of employment, reflected a racist attitude by Potter

does not constitute *action* protesting discrimination.


Even if the Plaintiff had engaged in some conduct protesting Potter's comment,

which she did not, it would not be protected activity because it was focused not on the

*employer's* conduct but on that of an individual, non-supervisory, employee.  Thus, in

---

[7]It is clear that such an isolated comment cannot serve as the basis for a hostile
workplace claim.  Thus, as was reiterated by the Supreme Court in Clark County School Dist. v.
Breeden, 532 U.S. 268, 121 S. Ct. 1508, 1510 (2001):

> Workplace conduct is not measured in isolation; instead, "whether an environment is
> sufficiently hostile or abusive" must be judged "by 'looking at all the circumstances,'"
> including the "frequency of the discriminatory conduct; its severity; whether it is
> physically threatening or humiliating, or a mere offensive utterance; and whether it
> unreasonably interferes with an employee's work performance. . . .  Hence, "[a] recurring
> point in [our] opinions is that simple teasing, offhand comments, and isolated incidents
> (unless extremely serious) will not amount to discriminatory changes in the terms and
> conditions of employment."

And as the First Circuit Court has noted, the hostile work environment standard must be kept
"sufficiently demanding to ensure that Title VII does not become a 'general civility code.'"
O'Rourke v. City of Providence, 235 F.3d 713, 729 (1st Cir. 2001).

Silver v. KCA, Inc., 586 F.2d 138 (9th Cir. 1978), the plaintiff objected to a racially derogatory remark uttered by a co-worker, demanded and received an apology from the same co-worker, and subsequently was fired.  In finding that the plaintiff had failed to establish a *prima facie* case of retaliatory discharge under Title VII, the court determined that the opposition of an employee to a co-worker's own individual act of discrimination "does not fall within the protection of Title VII."  Id. at 142.  This holding was later reaffirmed by the 9th Circuit in Folkerson v. Circus Circus Enterprises, Inc., 107 F.3d 754, 755 (9th Cir. 1997)[8] ("In order to prove that she engaged in protected opposition, "the opposition must be directed at an unlawful employment practice of an employer, not an act of discrimination by a private individual") and adopted by the Eleventh Circuit in Little v. United Technologies, Carrier Transicold Div., 103 F.3d 956, 959 (11th Cir. 1997) ("We agree with the Ninth Circuit's disposition of Silver, a case factually similar to the one at hand.  As stated by that court, [b]y the terms of the statute . . . not every act by an employee in opposition to racial discrimination is protected.")

Furthermore, even if Plaintiff engaged in "protected activity" when telling Potter (and perhaps others) about her belief that his comment was prejudiced, there is absolutely no evidence of a causal connection between Potter making the comment and her subsequent termination; a termination which resulted, in significant part, from Plaintiff's inability to get along with her black co-workers and a black group leader.  The

---

[8]Of course, if the employer actively condones or fails to respond to complaints of a hostile work environment based on race, the protest may be considered a protest of the employer's own discriminatory conduct.  However, there had been no prior complaint about Potter.  The comment, on Plaintiff's first night of employment, did not follow a failure by the employer to respond to an earlier complaint of harassment.  (And Defendant did, subsequently, respond to the comments appropriately.)  Thus, the theoretical exceptions recognized in these

fourth prong, evidence of a causal relationship between the protected activity and the adverse action, cannot be skirted.[9]

Thus, while it is clear that while no one, understandably, agreed with Plaintiff's view that Potter's remark was a racial comment, it is also clear that no one in management believed that the comment was appropriate. Thus, Plaintiff's group leader, manager and director all indicated to her that they thought that it was rude and inappropriate and should not have been said by Potter. Potter was counseled about making such a comment, which clearly had offended the Plaintiff. Plaintiff, after the comment, continued to work for Defendant, and was assigned to other trainers. When that failed she was reassigned to an entirely different department, in what turned out to be an unsuccessful effort to provide her with a fresh start. There simply is no evidence of any causal link between any alleged "protected activity" and any subsequent adverse employment action.

C. Defendant Has Produced Evidence of A Lawful Basis for Its Action

Assuming that the Plaintiff has established a *prima facie* case, the employer has

---

decisions does not come into play here.
     [9]Thus, the First Circuit has noted the importance of this prong, noting:

     That an employer knows of a discrimination claim and thereafter takes some adverse action against the complaining employee does not, by itself, establish causation. "Were the rule otherwise, then a disgruntled employee, no matter how poor his performance or how contemptuous his attitude toward his supervisors, could effectively inhibit a well-deserved discharge by merely filing, or threatening to file, a discrimination complaint."

Mesnick v. General Elec. Co., *supra* at 828. These words are pertinent here.

15

met its burden, under both federal and state law, of establishing that it acted based on a lawful reason.  Thus, it has presented evidence that Plaintiff was insubordinate, belligerent, failed to get along with both co-workers and supervisors, and did not accept direction.  These attributes, displayed so decidedly by a probationary employee, are lawful reasons not to hire Plaintiff as a full-time regular employee.  *See,* Johnson v. Allyn & Bacon, Inc., 731 F.2d 64, 73 (1st Cir.) (confirming that inability to get along with co-workers amounts to legitimate non-discriminatory reason for firing employee), *cert. denied,* 469 U.S. 1018, 105 S. Ct. 433, 83 L.Ed.2d 359 (1984); *Cf.*, Alba v. Sampson, 44 Mass. App. Ct. 311, 316, 690 N.E.2d 1240, 1244 (Mass. App. Ct., 1998) (noting, in context of an interference claim, "…the ability of co-workers to get along and work together is vital to the efficient functioning of any company…").  *See, also*, McNairn v. Sullivan, 929 F.2d 974, 978 (4th Cir. 1991) (employee was not promoted because she was caustic with other employees, made mistakes, and did not follow instructions); Burrus v. United Tel. Co., 683 F.2d 339, 343 (10th Cir.) (inability to get along with others justified termination), *cert. denied,* 459 U.S. 1071, 103 S. Ct. 491, 74 L.Ed.2d 633 (1982); Ahmed v. Berkshire Medical Center, Inc., 1998 WL 157016, *7 (D.Mass., 1998).[10]  Having met its burden at the second stage, any inference of discrimination drops from the case.  "Under Massachusetts law, as under federal law, the employer's provision of a non-discriminatory reason or reasons rebuts the presumption of discrimination created by the *prima facie* case, and the issue of discriminatory intent then turns upon the evidence."  Joyal v. Hasbro, *supra*, 380 F.3d at 16.

---

[10]Again, given the fact that complaints about Plaintiff predominately came from black employees, there can be no rationale basis for inferring that the reports relating to the difficulty

### D.  There is No Evidence of Pretext

Having articulated its legitimate reason for acting, the question is whether the articulated reason is merely a pretext, *i.e.*, are there facts that would prove that the employer didn't believe the reason(s) that it has asserted, *i.e.*, that they were "deliberately false."[11] Absent proof of pretext, whatever the theoretical basis for Plaintiff's discrimination claim, and whether or not Plaintiff has established a *prima facie case*, Summary Judgment is warranted.

As a preliminary matter, Defendant notes that the same individuals who hired Plaintiff in October discharged her in December.  It is simply irrational to assert that Plaintiff was hired, notwithstanding her race, and then terminated less than two months later *because* of her race.  This common sense truism, adopted as the "same actor rule", belies any claim of discrimination here.  Dziamba v. Warner & Stackpole LLP, 56 Mass. App. Ct. 397, 406, 778 N.E.2d 927 (Mass. App. Ct. 2002) (". . . it is improbable that the same persons who hire or promote someone already in an older age bracket will suddenly develop an aversion to older people.")  *See, also*, Wexler v. White's Fine Furniture, Inc., 246 F.3d 856, 866-867 (6th Cir. 2001) ("[W]here the hirer and firer are the same individual and the termination of employment occurs within a relatively short time span following the hiring, a strong inference exists that discrimination was not a determining factor for the adverse action taken by the employer").  Moreover, not only is there is no evidence of any pattern of discrimination by Defendant against black

---

of working with Plaintiff were, in any way, tainted by racial animosity.
    [11]The court, in Joyal, assumed that Massachusetts law was more favorable to the Plaintiff and that we will assume *arguendo* that under Massachusetts law "any *deliberately false reason* would get [Plaintiff] to a jury."  Id. (emphasis added).  There is no evidence of any

employees, it is clear that Plaintiff was hardly the only black employee working on the third shift in the Environmental Services department.

As discussed in "Section II. A" above, when evaluating evidence of pretext it is imperative to remain cognizant that the issue is not whether the employee admits to the wrongdoing, or even whether the employer was correct.  The employee's denial of culpability may be sufficient to create a material issue of fact *vis a vis* whether his discharge was fair[12], it does not create a triable issue of fact as to whether the employer believed the employee deserved not to be retained.  Since managers receive information from various sources, if they act in good faith[13] based on such reports, an assertion that the reports are erroneous, or even proof that the reports were erroneous, would not suffice to demonstrate pretext.  Gray v. New England Tel. and Tel. Co., 792 F.2d 251, 256 (1st Cir. 1986) ("The plaintiff did not refute any of NET's testimony about its perception that he was violating the agreement."); Mesnick v. General Elec. Co., 950 F.2d 816, 824 (1st Cir. 1991); Matthews v. Ocean Spray Cranberries, Inc., 426 Mass.

---

deliberately false reason here.

[12]"Employees may be subjected to workplace decisions that they perceive are unfair, ill conceived, arbitrary, or vindictive.  An employer's decision may in fact be any (or all) of these.  But not every claim of workplace unfairness is a claim of discrimination, and the MCAD has no jurisdiction to order relief for workplace disputes that arise for reasons other than discrimination."
New Bedford v. Massachusetts Commission Against Discrimination, 440 Mass. 450, 799 N.E.2d 578 (2003).

[13]The First Circuit recently slightly modified the rule in those rare circumstances that "the employer might believe its stated reason for its action and honestly believe that the reason was nondiscriminatory, while the jury might find that the same reason was honestly held but conclude that it constituted discrimination (*e.g.*, stereotyping).  To that extent, the employer's good faith belief is not automatically conclusive; but this refinement on Mesnick is likely to be rare and is in any event irrelevant here."
Zapata-Matos v. Reckitt & Colman, Inc., 277 F.3d 40, 45-46 (1st Cir. 2002).  This exception would come into play here only if there was evidence that management believed that blacks in general could not get along with co-workers.  The evidence is to

122, 128, 686 N.E.2d 1303, 1309 (Mass., 1997) (upholding summary judgment for employer although the employee denied misconduct when, after its investigation, the employer concluded, correctly or otherwise, that the misconduct had occurred.) *See, also,* Pryor v. Holiday Inns, Inc., 401 Mass. 506, 511, 517 N.E.2d 472, 475 (Mass., 1988) ("an employer may fire an employee for a nondiscriminatory reason, even though the reason is based on erroneous conclusions of fact."); Williams v. Brigham & Women's Hosp., Inc., 2002 WL 532979, *4 (Mass. Super.,  2002) ("There is no evidence in the record upon which to conclude that Partners' decision to terminate Williams was based on anything other than the belief, *mistaken or otherwise*, that she was involved in the Wanda Almeida check cashing scheme..."  (emphasis added).

Defendant recognizes that a claim that the Employer honestly believed that misconduct occurred is not immune from review, and that a wholly implausible belief will not be sufficient.  Gray v. New England Tel. and Tel. Co., 792 F.2d at 256.  However, a reasonable conclusion, reached after personally observing inappropriate behavior and receiving credible reports from numerous sources, none of whom had any obvious reason to fabricate the reported problems with Plaintiff[14], is sufficient basis to formulate

---

the contrary.

[14]A non-discriminatory decisionmaker may take an unlawful action if he relies upon evidence produced exclusively by a supervisor bent on discrimination, who presented false or misleading information to the decisionmaker (or withheld exculpatory information from the decisionmaker) in order to effectuate a discharge.  *See*, Cariglia v. Hertz Equipment Rental Corp., 363 F.3d 77, 87 (1st Cir. 2004).  However, here Bailey's recommendations were based on his own observations, including occasions when he was attempting to obtain Plaintiff's explanation for seeming misconduct, a step not undertaken in Cariglia.  Furthermore, the reports were from numerous sources, including several black co-workers and a group leader, and eight nurses who had never complained about any other black custodian.  There is absolutely no evidence that any of these reports, much less all, were the result of discriminatory bias by those making the complaints.  Indeed, as Bailey told Plaintiff directly, "he had a hard time believing that this many people were making up stories about her."  (Statement ¶ 6)

an appropriate belief that the individual would not be a good employee.  <u>Matthews v.</u>

<u>Ocean Spray Cranberries, Inc.</u>, 426 Mass. 122, 129, 686 N.E.2d 1303, 1309 (Mass.,

1997); <u>Pakizegi v. First Nat. Bank of Boston</u>, 831 F. Supp. 901, 911 (D.Mass., 1993)

("Even assuming that the complaints about Ms. Pakizegi's work were false, there is no

evidence that Mr. Courtney knew that these complaints had been wrongfully

manufactured.  Mr. Courtney was entitled to exercise his business judgment and rely

upon these complaints from other workers and supervisors in the department.").

Plaintiff was a probationary employee in the process of being judged for potential

regular employee employment.  She clearly, and undisputedly, had run-ins with

numerous co-workers.  She clearly and undisputedly was rude to Todd Bailey.  The

decisionmakers clearly and undisputedly had received numerous credible complaints

about Plaintiff's performance and behavior, including written complaints from registered

nurses, indicating that Plaintiff was not listening to instructions regarding proper

sterilization procedures.  There is no basis for finding that the employer, who ended the

Plaintiff's probationary employment based on these problems, did not believe them to

be valid.

### III.  The Defamation Claim

Under Massachusetts law, "defamation" is the unprivileged publication of false

material by one without privilege to do so that discredits a person in the minds of any

---

Accordingly, the decisionmaker was entitled to rely on these reports when taking action.

considerable and respectable class of the community.  <u>Smith v. Suburban Restaurants,</u>

<u>Inc.</u>, 374 Mass. 528, 529 (1978).  As this court has noted:

> The elements of a defamation claim include (1) a false and defamatory
> communication (2) of and concerning the plaintiff which is (3) published or shown
> to a third party."  <u>Dorn v. Astra USA</u>, 975 F. Supp. 388, 396 (D.Mass., 1997) (*citing*
> <u>McAvoy v. Shufrin</u>, 401 Mass. 593, 597, 518 N.E.2d 513, 517 (1988)).  The burden
> of proving the essential elements of a defamation claim is on the party bringing the
> claim.  *See*, <u>Veilleux v. Nat'l Broadcasting Co.</u>, 206 F.3d 92, 117 (1st Cir. 2000).
> Without such proof, summary judgment should enter in favor of the moving party.
> *See*, <u>Pardo Hernandez v. Citibank, N.A.</u>, 141 F. Supp.2d 241, 245-46 (D.P.R.
> 2001); <u>Croslan v. Housing Auth. for City of New Britain</u>, 974 F. Supp. 161, 171
> (D.Conn., 1997).
>
> It should also be noted "[t]he Massachusetts Supreme Judicial Court has stated
> that defamation traditionally is a disfavored action, and that 'courts have applied a
> stricter standard to complaints for defamation by requiring defamation plaintiffs to
> plead the elements of their claims with specificity.'"  <u>Dorn</u>, 975 F. Supp. at 395-96
> (quoting, <u>Eyal v. Helen Broadcasting Corp.</u>, 411 Mass. 426, 583 N.E.2d 228, 231
> n. 7 (1991)) (further citations omitted).  Thus, to survive a motion to dismiss, and
> per force a motion for summary judgment, "a defamation plaintiff must plead:  (1)
> the general tenor of the libel or slander claim, along with the precise wording of at
> least one sentence of the alleged defamatory statement(s); (2) the means and
> approximate dates of publication; and (3) the falsity of those statements."  <u>Id</u>. at
> 396 (citing cases).

<u>Kibbe v. Potter</u>, 196 F. Supp.2d 48, 74-75 (D.Mass., 2002); *See, also*, <u>Phelan v. May</u>

<u>Dept. Stores Co.</u>, 60 Mass. App. Ct. 843, 847, 806 N.E.2d 939, 944 (Mass. App. Ct.,

2004).

The Plaintiff's defamation claim, based on a complaint by Registered Nurses to

BMC indicating that Plaintiff was not performing her job appropriately, clearly fails for a

variety of reasons.  First, the statement was not published by Defendant, it was

published to Defendant.  Accordingly, Plaintiff will be unable to meet her burden of

establishing ". . . that the defendant was at fault for the publication of a false statement."

 <u>White v. Blue Cross & Blue Shield</u>, 442 Mass. 64, 66, 809 N.E.2d 1034, 1035 (2004).  If

"defamation law is to provide a remedy for [Plaintiff], the correct party to be charged with culpability must be, as it always has been, the originator of the defamatory statement communicated to a third party."  Id. 442 Mass. at 72, 809 N.E.2d at 1040.

Secondly, the comments of the signatories regarding Plaintiff's competence and behavior are opinions, and thus not actionable as a matter of law.  Aldoupolis v. Globe Newspaper Co., 398 Mass. 731, 733, 500 N.E.2d 794 (1986).  See, also, King v. Globe Newspaper Co., 400 Mass. 705, 709, 512 N.E.2d 241 (1987).

Furthermore, these registered nurses are professionals with responsibility for patient care in the operating room.  If they believe that a probationary custodian is not cleaning appropriately, not taking directions to learn how to clean appropriately, or otherwise disrupting their own workplace they clearly have the right (arguably even an obligation) to report such deficiencies to management; and they must be free to do so without fear of liability.  Both the signatories of the alleged defamatory note and the management of the Environmental Services department share a common interest in the proper cleaning of the operating room and the behavior of custodians assigned to the area. Accordingly, the comments reflected in the criticism are privileged.  See, White v. Blue Cross & Blue Shield, supra, 442 Mass. at 69, 809 N.E.2d at 1039, where the Supreme Judicial Court, rejecting the doctrine of self-publication, based its conclusion, at least in part, on the fact that its acceptance would:

> . . . run counter to another important aspect of employer-employee relations, an employer's privilege to "disclose defamatory information concerning an employee when the publication is reasonably necessary to serve the employer's legitimate interest in the fitness of an employee to perform his or her job." Bratt v. International Business Machs. Corp., 392 Mass. 508, 509, 467 N.E.2d 126 (1984). . . . These privileges serve the important public purpose of promoting the free flow

22

of information in the workplace, and are lost only when the employer recklessly makes "unnecessary, unreasonable or excessive" publications.

Indeed, it has long been the law of the Commonwealth that a conditional privilege arises when a speaker and his audience have a common interest and their communication furthers that interest. Foley v. Polaroid Corp., 400 Mass. 82, 94 (1987); Sheehan v. Tobin, 326 Mass. 185, 190-91 (1950); McCone v. New England Tel. & Tel. Co., 393 Mass. 231, 235 (1984). The court's of Massachusetts have gone so far as to find that an "employee of a company enjoys a qualified privilege to make disparaging comments about the performance of an employee of another company with which the first has a business relationship insofar as the comments are relevant to that relationship." Humphrey v. National Semiconductor Corp., 18 Mass. App. Ct. 132, 133 (1984). Clearly, the criticisms from these Operating Room RNs regarding the perceived work deficiencies of an Operating Room custodian are similarly privileged.[15]

Nor is there any evidence that would allow a conclusion that any privilege was lost due to excessive publication by anyone. The letter of complaint was given by the RNs to the third shift group leader, and thereafter only shared with those involved in making decisions about Plaintiff's employment. Accordingly, the defamation claim must be dismissed.

Respectfully submitted,

---

[15]Even before the SJC's recent pronouncement this court, in dicta, has recognized the possibility of such privilege. See, Kibbe v. Potter, 196 F. Supp.2d 48, 75 (D.Mass., 2002) ("Plaintiffs may possess a type of "qualified" privilege to publish allegedly defamatory material to their employer, such as "a conditional privilege 'where the publisher and the recipient have a common interest, and the communication is of a kind reasonably calculated to protect or further it.'" Foley, 508 N.E.2d at 79 (quoting, Sheehan v. Tobin, 326 Mass. 185, 93 N.E.2d 524, 528 (1950)). If so, the burden would be on Griffin "to prove that the statements were made recklessly," Id. at 79-80, a burden he does not attempt to sustain.).

_/s/ Jay M. Presser, Esq._____
Jay M. Presser, Esq.
BBO No. 405760
Counsel for Defendant BMC
Skoler, Abbott & Presser, P.C.
One Monarch Place, Suite 2000
Springfield, Massachusetts 01144
Dated:  December 10, 2004    Tel. (413) 737-4753/Fax: (413) 787-1941

## CERTIFICATE OF SERVICE

I hereby certify that a true and accurate copy of the foregoing Motion To Postpone Case Management Conference was electronically filed and served upon the pro se Plaintiff, Barbara Woods at 33 Granville Street, Springfield, MA 01109, by first-class, U.S. mail, postage prepaid, on December 10, 2004.

_/s/ Jay M. Presser_____
Jay M. Presser, Esq.

24