EXHIBIT 1

11-21-02



Barbara Woods: en # 45895- start date of 10-21-02

Barbara has been fully and adequately trained on the importance of the highest level of cleanliness that is required in operating rooms at BMC. Specific areas that she has been trained to clean are, OR rooms 1-12 including all sub utility areas, furniture, OR table, overhead lights, walls, ceiling and floors thoroughly on a nightly basis. Also, Barbara has been shown how to clean PACU and the areas that accompany it, men's and woman's locker rooms, frozen section room, OR lab, anesthesia room, OR lounge, physicians lounge and bathrooms nightly.

Barbara will now be trained in the cleaning of other critical care areas such as the Emergency Dept., Cath Labs, BRL Labs, Radiology, etc.

An area that I see Barbara will need further and ongoing development will be her collaboration and teamwork skills. i.e.: she must take training and constructive feedback from her peers in a more accepting way and cannot concern herself with what the person training her is doing when she is not with her.

It is critical for all our employees to embrace the organizations values in regards to its operating principles to achieve the level of success that BHS requires.

Sincerely,

*T. Bailey*

Todd Bailey
E.S. Supervisor

*Refused to sign*

Barbara Woods
Custodian 2

EXHIBIT #2

On Tuesday Dec. 3, 2002 Burt and Tracey met with Barbara to discuss a verbal counseling that was being issued for Insubordination. This was the result of a meeting held with Burt ,Todd and Barbara on 11-27-02. During Burt's conversation with Barbara she stated that she did not agree with the counseling that was being issued. Barbara stated that she felt that she was not insubordinate toward Todd,(Environmental Services supervisor), who was previously her supervisor.

During the conversation Barbara stated that the other employees were lying, and it was their word against hers. Burt explained to her that when the three of them met on 11-27-02 it was to ask her what had happened in the Emergency room on her first night of training. This was her opportunity too explain her version of what had happened. She said she had to pick up the kids and didn't have time to talk to us. At this time she said that she didn't agree with the documentation Todd had, and would not sign any paperwork because if she did she would she would only have 6 months to file a suit. She then stated she would call the NAACP and the newspaper and Burt would see his name in the paper.

Burt then refocused her back to the insubordinate behavior. She again replied that she didn't feel she had been insubordinate and that African Americans use their hand during conversation. Tracey stated that all different types of people talk using there hands during conversation. Barbara stated that night in the E.D. she worked like a slave. Burt said that everyone works very hard in our department. Barbara then stated for us to look up the definition of slave on the Internet. That there were different definitions.  She asked if any other employee was given a warning. Burt, replied that we could not discuss any other employee discipline actions with her. He also stated that we would not discuss hers with any other employee. At this point we were here to inform her that she needed to correct her behavior. And her behavior needed to be corrected or further disciplinary action would follow.

Tracey gave Barbara an opportunity to make comments and she refused/ Tracey also gave Barbara Tim's telephone number and told Barbara she could make an appointment to discuss this situation further if she felt it necessary.

We then recapped meeting by telling Barbara that the verbal counseling was only in her departmental file and she was receiving this to help correct her insubordinate behavior.

*(handwritten margin notes: "Earlier", "Todd", "People", "GESTURE", "Verbal – conc", "First Meeting", "why did the people")*

EXHIBIT ___1/___
Bailey
DATE 9-27-04
S. ROY, RPR

11-27-02

This is to document a meeting that took place between Burt Alves, Barbara Woods and me. The reason for calling the meeting was to have Barbara sign off on training documents and some suggestions for her further development within the BHS system. She read, agreed with and signed the docs concerning the level of cleaning she has been taught to this point.

When she read the section regarding some ongoing development issues that I thought she needed to work on she stated that I was "trying to trick her to sign something" and that she believed should not have been documented. She refused to sign this and another document that referred to an agreement that was reached concerning a statement that was made without any ill intent by another custodian while in her presence about her brother. Before that particular meeting between Barbara, the custodian who made the comment, a lead custodian and I adjourned that morning of 11-21-02 an agreement had been reached between the 2 parties that an apology had been given and that the matter had been resolved. She stated that the wording was not accurate and again said she would not sign.

When speaking of the aforementioned "ongoing development issues" I was referring to individual encounters Barbara has had with her fellow peers who have been training her on all aspects of her duties. She has not been accepting her training from her peers well. The first night (Sun. the 24th) of her ongoing training in the Emergency Dept. when approached by a fellow custodian who let her know that where she was sitting in the E.D. was not an area that was allowed for people in our dept. to be, Barbara responded by saying "I heard you but, it is none of your business where I sit" the custodian replied "that if anyone had told me that I couldn't sit in this area that I would say I didn't know and was sorry". Barbara's response was "Oh well, that's just you".

This encounter with Barbara disturbed that custodian so bad that she broke down in tears and having worked together for a matter of only 4 hours.

In our meeting that morning, when I brought this issue to Barbara's attention she said that she couldn't comment on that matter and that she had to leave.

When I told her of the severity of this matter and that she should take 2 minutes to explain her side of the story she stated at that point she felt that I was harassing her and turned to Burt and said "Do you feel that I would do something like that" Burt immediately said that we would like her statement which I reiterated would be the best thing to do at this point she said "that

I'm not talking to you, I'm talking to Burt". I let her know at that point that I was her direct report supervisor and that I have every right to ask her questions. She then proceeded to ignore all responses from me and stood up and walked out of Burt's office.

She came back down the hall 30 seconds later and said that she was going to take this matter to a outside source which she said the name so fast that neither Burt nor I caught the name.

Todd Bailey

UNITED STATES DISTRICT COURT

DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| BARBARA WOODS,<br><br>Plaintiff,<br><br>vs.<br><br>BAYSTATE HEALTH SYSTEMS,<br><br>Defendant | Case No.: CIVIL ACTION NO.04-30010-KPN<br><br>PRO-SE PLAINTIFF INTERROGATORIES TO DEFENDANT |

1. Please provide the date plaintiff began employment with defendant.

    a. Please provide the salary and benefits

2. Identify by name address and phone number For the following persons to be witness for the purpose of obtaining an deposition.

    a. Todd Bailey

    b. Tracy Malloy

    c. Burt Ives

    d. Tim Culhane

    e. Moira Plummer

    f. Don Potter

    g. Caroline Anzeze

    h. Colleen Foley Health Services

    i. Doris Rodriguez

    j. Michele Forcier R.N.

k.   Molly S. Carlin R.N

l.   Jean Patenaude

m.   Donna Kaneany

n.   Annette Harris

o.   Annie Gamble

3. State whether the defendant has a Personnel handbook and or policy manual or other documents setting forth policies with regard to

a.   Insubordination and when is it used

b.   Discrimination

c.   Defamation

d.   Harassment

e.   Retaliation


4. Please provide the organizational charts for the defendant employer for the year 2002

5. For each employee of the defendant employer who is considered management set forth each job title

a.   Job Description

6. Please provide a job description for registered nurses

a.   Molly s. Carlin

b.   Michele S. Forcier

7. Describe in detail each and every meeting
in which the plaintiff was involved
a.  the date it took place
b.  the name and title of all in attendance
c.  the hour it took place
d.  was the plaintiff given any prior
notice of these meetings
e.  a detailed description of what was
discussed
f.  identify and attach all memoranda and
    notes or documents related to these
    meeting
8. Please provide the names and addresses
and phone number of the doctors and nurses
and orderlies that worked in the emergency
room between the dates of November -December
02 and the hours of 11-7am for the purpose
of being deposed.
9. Identify by name the person or persons
responsible for the transfer of the
plaintiff to the emergency rooms
10. Please provide the names of the persons
that trained the plaintiff
a.  the years that person was employed

b.   what type of education or training
     required to hold such a position

11. Please provide the name of the person
responsible for the inspection of the
operating rooms.

12. Please provide documentations that
relates to the inspection of the operating
rooms in Oct-Nov- Dec- 02.

13. Please provide the name of the person
required to handle complaints in reference
to the cleanness of the operating rooms in
the year 2002.

14. Please provide the date that management
inform the plaintiff that her work was
unsatisfactory.

a.   please provide the details of the meeting

b.   who attended the meeting and what was
     discussed

c.   a description of how her performance was
     unsatisfactory

d.   explain why the plaintiff was not placed
on an probationary status until her alleged
unsatisfactory work performance could be
corrected,

15. Please provide the names and address of and phone number of the persons employed in the plaintiff position after her wrongful termination for the purpose of being deposed.

a.  if any is this person still in that position

b.  has that person or persons experience any harassment or discrimination while employed in the operating rooms

16. Please provide the policy for unsatisfactory work performance.

a.  was the plaintiff given an opportunity to make her work satisfactory.

b.  if so what was discussed and how long would she be placed on a probationary status.

17. Identify by name persons that have been given an opportunity to be placed on probationary status in reference to their work performance.

18. State whether any claims has been filed against the defendant in reference to discrimination or any civil rights the date

it was filed the name and address of the
person a description of the complaint since
the plaintiff departure and for the prior 5
years.

Respectfully submitted

I hereby certify that a true and accurate
Copy of the above document will be hand
delivered to the office of Skoler &Abbott
Presser one Monarch place Suite 2000 on May
19, 2004

Dated this 18th day of May, 2004

_____

# COMMONWEALTH OF MASSACHUSETTS
## COMMISSION AGAINST DISCRIMINATION
436 Dwight Street, Suite 220
Springfield, MA  01103

(413) 739-2145
fax (413) 784-1056

December 29, 2004

Ms. Barbara Woods
33 Granville Street
Springfield, MA 01109

> RE:    **Information Request**
> **Woods v. Baystate Health Systems**
> **Docket # 032300714**

Dear Ms. Woods:

Per your request, I have enclosed copies of the documentation submitted to our office by you relative to the above referenced matter:

1. Complaint (with summary) dated February 21, 2003
2. Correspondence dated May 8, 2003
3. Rebuttal dated June 18, 2003
4. Correspondence dated August 7, 2003
5. Appeal Brief

Please contact me should you need further information in this regard.

Sincerely,

Jerrold Levinsky
Deputy General Counsel

Enclosures

Dear Mr. Levinski                                   December 28,04
Deputy General Counsel


In Feb-03 I filed a Charge of discrimination against Baystate
Health Systems it was dismissed and I appealed the dismissal
I was informed that I had no more rights at the commission
But could seek remedy through the courts, I have been going
Pro-se in federal court with the defendant at the present time
We are in the summary judgment stage rule 56c and the court
Will only accept affidavits I would like the right to go to trial.
The defendant has stated in his motion that I provided no
Evidence to the MCAD which is not accurate. I offer evidence
To Karen Dome but for whatever reason she did not pursue
This I know by my witnesses where never contacted, the witness
list was relevant to the issues in the respondent statement. I hope
That you can provide me with an affidavit that supports that I did
In fact provide evidence to your commission again I work very
hard to get this fair studying the aspects of the law which is quite
Demanding and working full-time . In order for me to prevail
As you know I must dispute the facts I hope that you agree with
me that I deserve the right to go to trial. The judge has ordered
Me to respond to the motion by Jan-07-05, the affidavit would
Be used for no reason but in hope to prevail against the defendant
Motion I would hope that the judge would be fair and consider
It, again I have not only worked hard but suffered through 3
depositions with the defendant lawyer Presser . It is an uphill
Battle but I refuse and stand on what is right.
     Would you kindly consider the above matter and respond
By Jan-03-04 or at your earliest convenience.


        Respectfully
      *Barbara West*

COMMONWEALTH OF MASSACHUSETTS
COMMISSION AGAINST DISCRIMINATION
436 DWIGHT STREET, SUITE 220
SPRINGFIELD, MA 01103
(413) 739-2145

```
* * * * * * * * * * * * * * * * * * * * * * * * * * * *
                                  *
Barbara Woods,                    *
        Complainant               *
                                  *
                                  *
v.                                *
                                  *   Docket No.:   03-23-00714
                                  *
Baystate Health Systems/          *
Environment Services,             *
        Respondent                *
                                  *
* * * * * * * * * * * * * * * * * * * * * * * * * * * *
```

Please be advised that after a review of all the evidence, I hereby sustain the original Lack of Probable Cause finding in your complaint.

So ordered this 17th day of October 2003.

Cynthia A. Tucker
Investigating Commissioner

EXHIBIT

*B. Words*
*JHU  Tucker*

## The Commonwealth of Massachusetts
## Commission Against Discrimination
### 436 Dwight Street, Rm. 220, Springfield, MA 01103
### Phone: (413) 739-2145 Fax:

## - DISMISSAL and NOTIFICATION of RIGHTS -

| To: | Barbara Woods | Case: Woods v. Baystate Health Systems/Environment |
|-----|---------------|----------------------------------------------------|
|     | 33 Grandvill Street | Services |
|     | Springfield, MA 01109 | MCAD Docket Number: 032300714 |
|     |               | EEOC Number: 16CA301242 |
|     |               | Investigator: Karen Dome |

Your complaint has been dismissed for the following reasons:

[ ]  The facts alleged fail to state a claim under any of the statutes the Commission enforces.

[ ]  Respondent employs less than the required number of employees.

[ ]  Your complaint was not timely filed with the Commission, i.e. you waited too long after the date(s) of the alleged discrimination to file. Because it was filed outside the time limit prescribed by law, the Commission cannot investigate your allegations.

[ ]  You failed to provide requested information, failed or refused to appear or to be available for necessary interviews/conference, or otherwise refused to cooperate to the extent that the Commission has been unable to resolve your complaint. You have had more than 30 days in which to respond to our written request.

[ ]  The Commission's efforts to locate you have been unsuccessful. You have had at least 30 days in which to respond to a notice sent to your last known address.

[ ]  The Respondent has made a reasonable settlement, offering full relief for the harm you alleged. 30 days have expired since you received actual notice of this settlement offer.

[X]  The Commission issues the following determination. Based upon the Commission's investigation, the Commission is unable to conclude that the information obtained establishes a violation of the statutes. This does not certify that the Respondent is in compliance with the statutes. No finding is made as to any other issues that might be construed as having been raised by this complaint.

[ ]  Other (briefly state)

### - NOTICE of APPEAL -

If you wish to appeal the dismissal of your complaint and believe that the above stated reason for dismissal is incorrect, you may appeal to this Commission within 10 days after receipt of this notice. You or your attorney must make your appeal of the dismissal in writing to the appeals clerk of this Commission. **Attention: Migdalia Rivera.**

All employment complaints, where applicable, were filed by the MCAD with the Equal Employment Opportunity Commission. Our finding, which will be forwarded to its area office, JFK Federal Building, Boston, MA will be given substantial weight provided that such findings are in accordance with the requirements of Title VII of the Civil Rights Act of 1964, the ADEA, and/or the ADA, as amended.

_____          Date  7/23/03
Cynthia Tucker
Investigating Commissioner
Cc:    Elizabeth N. Blaney
       Baystate Health Systems/Environment Services
       280 Chestnut Street
       Springfield, MA 01199

# MEMORANDUM

CASE NAME: Woods v. Baystate Health Systems/Environment Services
DOCKET NO: 032300714
EEOC NO: 16CA301242
NUMBER OF EMPLOYEES: 25+
INVESTIGATOR:  Karen Dome

### RE:   RECOMMENDATION FOR DISMISSAL OF COMPLAINT
### DATE:  July 22, 2003

## ISSUE(S) INVESTIGATED:

On February 21, 2003, Complainant filed a charge alleging that Respondent discriminated against Complainant by terminating her employment and retaliating against her for opposing what she believed were racially derogatory comments, in violation of M.G.L. Chapter 151B, §4, (1), (4), and Title VII of the Civil Rights Act of 1964, as amended.

## SUMMARY OF FINDINGS:

Respondent denies all allegations.  The evidence presented supported Respondent's position that Complainant was not discriminated and/or retaliated against.  Respondent's decision to terminate Complainant's employment was based on legitimate, non-discriminatory business reasons based on Complainant's insubordination toward supervisors and complaints that were made about Complainant's work performance during her ninety (90) day introductory period.  Complainant has failed to produce sufficient evidence of pretext.  Therefore, there is insufficient evidence upon which a fact-finder could form a reasonable belief that the Respondent committed an unlawful practice.


Karen Dome
Investigator

Migdalia Rivera
Supervisor

RECEIVED

JUN 19 2003

COMMISSION AGAINST
DISCRIMINATION/SPRINGFIELD

Dear Miss Rivera

June 18,03

Enclosed you shall my rebuttal I hope you find it informative, I have provided a witness list

Daniel Woods employed at Baystate
Has information about the statement
Treatment of staff
Witness of Plummer statement
About my work
Also work attire in the O.R. rooms
Knows of the character of Gamble
And others

George Narcisse employed at Baystate
Can testified to work performance
He has seen the finished product
About proper clothing
And other employees and treatment
Also George work in the O.R. dept
Before he was moved

Robert Williams most recently
Worked in the O.R. dept
Has knowledge of Potter , Gamble
And Bailey and also his treatment



In that dept before he was moved

Moira Plummer ?
Is  in management but has complimented me
About my work and has knowledge who
Trained me in the E.R. rooms
And about the inspection
And also about Potter screaming and yelling
In the meeting in Nov.

Colleen Foley
Health Services first Shift
Has information about how I wanted my position
And about my attitude and friendliness.
ABOUT MY STATE OF MIND

Friendly staff
Night Shift Rose X Darlene X
That I tooked my break at friendlys
And were cordial with them
Theresa X was employed  their
At friendlys but  has a new position
At Baystate as a Technical assitance
At nights can testified in reference
To character and I believe she
Has knowledge of Annie Gamble
True attitude.
DENISE FINN-RIZZO F.N.P.   First Shift
MASON Square - BAYSTATE
HAS Knowledge of my STATE
OF MIND - AND Character

*①*

On October 21, I began my employment at Baystate on first shft
For orientation. On Oct. 22 I was seen by Colleen Foley Health
Services for a physical upon having my physical it was noted
That I would required surgery in the near future, I ask Miss Foley
To please clear me to work for I needed my job. Miss Foley agreed
And stated further if their was a problem with time off she would
Speak to Mr. Bailey, whether she did or not I have no knowledge.
On Oct.23 my first day of training in the O.R. dept. I was met by
Moira Plummer Lead supervisor who instructed Don Potter to
Train me, around 4.00 am I was subjected to a discriminatory
Remark by Potter when he stated Here comes your ugly brother.
Who is a African American. I was shocked by this harassing
Comment. At. 4.20 am or so Potter and I had a conversation
I ask him did he treat all people this way , I ask him did he
Ever treat the nurses this way. His replied was no, I  also ask
Him did he think all black people were ugly for when he spoke
In reference to my brother he was speaking about my mother
And father who he knew nothing about and my family members.
Potter replied was he was joking and men often joke with one
Another, I replied my brother wouldn't dare joke with you like
That we were not raised that way. I even invited Potter to prove
That Danny would readily accept this discriminating comment
Potter declined to do so, I also said that you must have some
Prejudices about you It was this night on the 23, that I mentioned
To Potter about prejudices no other time did I say it to him. Our
Conversation ended with if that the way you want it. Potter has
Not apologize to me or my brother since management made him
Aware.  The following night I was met by Moira Plummer Lead

Supervisor Oct. 24 Moira began her conversation by saying I heard
You were religious and Potter offended you, Are you alright I replie
I wanted my job, Moira restated what Potter said that he was joking
Moira Plummer stated he was wrong, Todd Bailey never spoke to n
That night. It is my position that Potter continued to discrimina:e by
falsely reporting that I was running around calling him prejudice to
Management Todd Bailey. Around Nov 16 at the end of my training
A meeting was held present Annie Gamble Caroline Anzeze Moira
Plummer Don Potter Todd Bailey the meeting consist of schedule
And days off in general, when I was getting ready to leave Bailey
Requested a private meeting with me at this meeting Bailey ask
Me how I was feeling I stated that I was glad training was over
Bailey then stated he heard that I was running around calling
Potter prejudice I immediately reminded about how he spoke
In our interview session about gossip to stay away from it.
I ask Bailey who was saying this and his replied was Annie
Gamble  I told him I never said that to her, but I refer Bailey
Back to the discriminatory comment Potter made in Oct.
The meeting ended soon after.

On  Nov. 17 or so a meeting was held at the end of shift present
Moira Plummer Annie Gamble and Bailey, Bailey began the
Meeting by saying all to speak freely and that we can resolve
Matters ourselves and everything will be confidential . Bailey ask
me to reveal my concerns I proceeded to do so I ask Gamble what Bailey
Was saying, Gamble replied that she never told Bailey that but that she
Said she overheard it, Immediately Moira Plummer jumps in and says
Caroline and Don are saying that. Moira then defends Potter character

3

I ask here not to speak to me in that tone, and that I am not a child
The atmosphere was hostile and intimating Moira Plummer began to
Cry, Annie Gamble begins to speak her opinion about when I ask her
Where she was going , Mrs. Gamble started out talking bout when she
was born down south and they treated you like a slave watching over \
Like a dog , I mentioned to her that just the way you trained me and I
Was glad that training was over. Mrs Gamble was yelling and not
Using a normal tone. The meeting was not successful. On Nov. 18
Another meeting was held, present Potter Bailey and Plummer This
is the first meeting with Potter Bailey begins to speak freely ,Potter T
Starts off yelling and screaming when I began to address my concerns
Potter stated that already talked about it I said yes but you have never
Apologize Potter jumps up right in front of Bailey and screams I ask
Bailey are you going to let him scream at me like that Moira runs after
Potter I seek help from Bailey but he replied Potter upset, It is my position
that management would have treated me differently, when I voiced my
Opinion management wrote me up as being insubordinate, and also verbal
Warnings.   It is my contention that ------------------------------------------
Management retaliated against me for belief and allow Potter to intimate
Me and created a Hostile environment. Did I not have the same rights
As Potter I was afraid of management the outcome was obvious from
This point. The meeting ended with Bailey telling me I was oversensitive
And that he would write me up for what Annie Gamble said in a prior
Meeting. The next day management elected to talk to my brother Daniel
never informed Daniel about the discriminatory comment , Management
Told Daniel and ask him what would he had said , Daniel replied I don't



don't know it wasn't said to me. It is my position that my brother is
Threatened  Daniel stated it is a insult to me and my family management
nformed Daniel about his rights, since the investigation at baystate
Daniel has been suspended for one day, my brother is frightened to
peak for fear of losing his job.

)n Nov.20 or so another meeting held, Tim Callahan Todd Bailey
Tim did most of the talking stating that he felt it wasn't discriminatory
3ut  that potter should not have said it, I spoke very little for I was
Afraid of what they might do to my brother Management talked
About how I was protected, from such abuse and that he was told
Potter apologized, I did tell him Potter did not apologize in any event
[ was told that I would be moved to the emergency rooms, I asked
)id I have a choice, I received no reply I stated that you are holding
This against me. Management responses was no. I do agree with
3ailey when he stated that I liked the idea of moving they had left
Me no choice in the matter I was not wanted in the O.R dept, and they
Treated me that way for my belief .

he next night I arrived and read the work schedule Moira Plummer
he Lead was not present to get me started at my new position
ι co-worker Annette Harris was standing by the area Miss Harris
Vorked the other side of the emergency rooms Miss Harris informed
Me with my brother standing by that she would take me up but she
Had no authority, some time pass by and Moira showed up Miss Plumme
Apologized and I informed her about Harris not wanting to assist me
Miss Plummer had no response but a strong stare. I assume she had
'o ask her about it. Moira instructed Millie X to train me in the E.R.



At no time was Annette Harris my training as they stated. Later on that night I sat down in a chair the emergency rooms are very busy and I did not get a chance to take my break it was around 4.00am had just sat down and I heard a voice yelling from around the corner did not understand why she was yelling Get-up from there Get-up from there, as she came closer she began to exercise authority which she did not have before I did not understand her at all, I said what Business is this of yours after she continued to demand her position At no time was Miss Harris crying but was rather aggressive . Later On that night I noticed Plummer talking to Harris I can only assume t was about when I was sitting down, Plummer elected not to ask me What happened but informed management, The night I met with Burt Ives my new supervisor Burt kindly welcomed me abroad and explained My days off and that I was the float Burt also respectively mentioned The issue with Annette Burt suggested that if I seen someone doing something wrong I had ever right as they did to talked to them and also Report it , my reply was that I also saw her sitting in a non-designated Area. I receive no responses I also I ask Burt that it appears that people Can report things falsely and it just who you decide to believe. Burt stated They could get in trouble for false reporting. Burt elected that night not To write up anything, I thought we had a decent talk. The next night I told Moira that since you didn't ask I must tell you the reason I was sitting own was I didn't feel well, I had worked all night until 4.00am without A break . Moira said okay, A couple of days passed by and no meetings Until I noticed Todd Bailey speaking to Annette Miss Harris cried again When Bailey was questioning her. The next night a meeting was held at The end of shift, Bailey Burt Ives I informed them I didn't have long to stay, Bailey started of the meeting with a paper for me to sign about



'otter and declined I didn't agree with wording, Bailey started reading, Another paper I declined to sign that ,Bailey is over six feet tall and was standing up Burt Ives was sitting at his desk and I was sitting next to the desk by Burt and Bailey began to ridicule to me about how people are talking about me I looked to Burt for help but to no avail, I told Baile that you are just harassing me for my belief for Bailey at this time was n My supervisor but Burt . I ask Bailey to leave me alone and request my I ring someone to our next meeting Bailey said who I said anyone that can Ielp me the NAACP the newspaper the Muslims brothers the meeting nded abruptly. The next night Burt Ives and Tracy Malloy 2nd shift upervisor requested a meeting Burt chose to write up the incidence It s my position that if I had touch Bailey in his face physically Ives Vould have stated it in his write-up a physical contact, at no time )id I touch Mr. Bailey I used my hands in talking its in my cultural. Burt ask me to sign I refused but try to get a understanding from him mentioned to Burt that this is Bailey diabolical plan to get rid of me This is the word they were puzzled at, and said what a good word I Suggested to them to look it up. I  also told Burt I worked very hard In the emergency rooms and was sweating, Burt did imply everybody Vorked hard. Burt stated that this is just a piece of paper and that it Vould be in my file for a year and if no further incidences happen They would throw it away and it was only verbal warning. The Meeting nded with Tracy Malloy giving me Tim number.

)n Dec. 9 I was terminated for the same thing I received a verbal warnin 'or, On that night Moira Plummer arrived in the emergency rooms at the nd of shift and said that she had some distressing news I said what wron



Now I doing my job, Moira replied I know but continued to walked me own this long hallway to the termination room I asked Moira where is Burt Ives Moira stated Burt is nowhere around, I arrived at this room Where sat Bailey and Tim Culhane , I sat down and Tim did all they alking Tim requested my badge and proceeded to fire me, I stated You got to kidding , I mentioned to Tim how he promised me he wouldn Iold my belief against, I stated this is what hypocrites do, Tim stated tha Your opinion and allowed me to received some documents he handed me My checked and left. I waited for the documents received them from Malloy at that was my termination.

I denied again pages 1-18 the events has been altered and words tated that I never said, In conclusion I Barbara Woods hold fast o the charge of retaliation and hope that the Commission would Deemed the charge lawful.

Thank you
Barbara Woods