UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| BARBARA WOODS,<br>      Plaintiff<br><br>v.<br><br>BAYSTATE HEALTH SYSTEM,<br>      Defendant | Civil Action No. 04-30010-KPN |

MEMORANDUM AND ORDER WITH REGARD TO DEFENDANT'S
MOTION FOR SUMMARY JUDGMENT (Document No. 31)
June 15, 2005

NEIMAN, U.S.M.J.

Barbara Woods ("Plaintiff"), proceeding *pro se*, is suing her former employer, Baystate Health System ("Defendant"), for race discrimination under federal and state law following her termination in December of 2002. With the parties' consent, the matter has been assigned to the undersigned pursuant to 28 U.S.C. § 636(c). Presently before the court is Defendant's motion for summary judgment. For the reasons described below, Defendant's motion will be allowed.

I. BACKGROUND

The following facts are undisputed and stated in a light most favorable to Plaintiff, the non-moving party. *See Uncle Henry's, Inc. v. Plaut Consulting Co.*, 399 F.3d 33, 41 (1st Cir. 2005). Plaintiff is African-American. Defendant hired her for a night-time cleaning position on October 6, 2002. The actual interviewing and hiring were done by Todd Bailey ("Bailey"), Defendant's Manager of Environmental Services.

Plaintiff began work on October 21, 2002.

Plaintiff was hired as a probationary employee, meaning that Defendant had ninety days to monitor and evaluate her and could terminate her employment at any time during that period. On December 9, 2002, Defendant exercised its termination option. The intervening facts follow.

On her first night at work, Plaintiff was trained by Don Potter ("Potter"), who is white. Approximately four hours into her shift, Plaintiff decided that she wanted to take her meal break with her brother, Dan Woods, who also worked for Defendant. As Woods approached, Potter, who apparently already knew him, stated "here comes your ugly brother's mug" or words to that effect. Plaintiff perceived this comment to be racially motivated.

Plaintiff later confronted Potter regarding the comment and Potter indicated that he had only been joking. Nonetheless, Plaintiff requested an investigation which was conducted by Bailey and Moira Plummer ("Plummer"), the lead custodian. Plummer is also African-American. Bailey and Plummer -- along with Tim Culhane ("Culhane"), the Director of Environmental Services -- ultimately concluded that Potter's comment was, in fact, intended as a joke. Nonetheless, they formally notified Potter that such comments were inappropriate and would not be tolerated. Despite this resolution, Plaintiff maintained her belief that Potter's comment was intended as a racial slur. Plaintiff also claims that the event began a "conspiracy" which ultimately led to her termination.

Sometime later, another incident occurred. Ann Gamble ("Gamble"), a third shift

custodian, was assigned to train Plaintiff in the acute care unit.  Gamble thereafter informed Bailey that Plaintiff was refusing to follow rules including certain cleaning instructions.  Gamble also reported that a number of nurses had complained about Plaintiff's behavior.  In response, Plaintiff criticized Gamble by calling her "lazy" and accusing her of watching over her "like a slave."  Gamble was reduced to tears by Plaintiff's criticism and requested that Bailey not schedule her to work with Plaintiff in the future.  Bailey and Plummer then met with Plaintiff to discuss the difficulties she was having with Gamble.  Plaintiff indicated at the meeting that, periodically, Plummer would refer to Don Potter as "Dan" and Plaintiff's brother, Dan, as "Don."  Plummer was upset at being accused of intentional wrongdoing and began crying.

Subseqently, Caroline Anzeze ("Anzeze") was asked to help train Plaintiff in the operating room ("OR").  Anzeze is also African-American.  During the training, Anzeze accidentally touched Plaintiff, evoking an angry response.  Plaintiff also claimed that Anzeze had intentionally tried to kick her and spit on her food and insisted that Anzeze never touch her again.

In late November of 2002, the OR nursing staff gave a handwritten letter to Plummer about Plaintiff's behavior.  The letter, signed by eight nurses, set forth various complaints about Plaintiff's work performance and conduct.  In essence, the nurses reported Plaintiff's refusal to follow sanitation procedures and directives and described her disruptive and offensive demeanor.  The letter serves as the basis for Plaintiff's defamation claim.

Plummer referred the nurses' letter to Bailey, who along with Culhane,

3

concluded that the "unprecedented" number of complaints prohibited Plaintiff from remaining in the OR. Accordingly, they decided to give Plaintiff a "fresh start" by transferring her to the emergency department. On Plaintiff's first night in the emergency department, however, she had a confrontation with yet another custodian, Annette Harris ("Harris"). Harris, herself African-American, was also reduced to tears because Plaintiff reportedly failed to follow instructions and uttered rude comments.[1]

On November 27, 2002, in response to the incident with Harris, Bailey held a meeting with Plaintiff and Burt Alves, another supervisor. At this meeting, Plaintiff refused to address Bailey, although he was still her immediate supervisor, and abruptly left. Describing Plaintiff's behavior as both rude and insubordinate, Bailey issued a formal disciplinary warning. Thereafter, Defendant decided to terminate Plaintiff's employment effective December 9, 2002.

After her termination, Plaintiff field a charge of discrimination with the Massachusetts Commission against Discrimination and the Equal Employment Opportunity Commission. Following dismissal of her administrative claim, Plaintiff filed the present action, alleging constitutional, statutory and common law causes of action.

On March 17, 2004, the court dismissed Plaintiff's constitutional claims as well as her claim for an "intentional tort." All that remained were Plaintiff's employment discrimination and retaliation claims, which purportedly arise pursuant to Title VII of the Civil Rights Act of 1964 ("Title VII"), 42 U.S.C. § 2000e *et seq.*, and Mass. Gen. L. ch.

---

[1] Allegedly, Harris saw Plaintiff sitting in the patient waiting area and informed Plaintiff that custodians were not supposed to do that. Plaintiff responded by telling Harris to "mind [her] own business."

151B ("chapter 151B"), as well as a common law defamation claim. In due course, Defendant filed the instant motion for summary judgment.

## II. STANDARD OF REVIEW

Summary judgment is appropriate "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c). Although some facts may be disputed by the parties, the summary judgment standard requires that there be no genuine issue of *material* fact. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247-48 (1986). A material fact creates a genuine issue for trial "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Id.* at 248. Substantive law governs the materiality, and only disputes over facts that might affect the outcome of the trial are material. *Id.* To avoid summary judgment, a plaintiff must make a sufficient showing of the elements essential to the case on which it bears the burden of proof at trial. *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986).

Defendant's statement of material facts is not disputed and, therefore, is deemed admitted pursuant to Local Rule 56.1. However, the court is mindful of the fact that Plaintiff is a *pro se* litigant and, accordingly, has construed her allegations liberally. *See Haines v. Kerner*, 404 U.S. 519, 520-21 (1972). Nevertheless, Plaintiff must still make a sufficient showing of the elements essential to her claims. *Celotex*, 477 U.S. at 322.

## III. DISCUSSION

5

Defendant's summary judgment argument tracks Plaintiff's three remaining claims: (1) Title VII and chapter 151B employment discrimination; (2) retaliation; and (3) defamation. The court will do likewise.

A. Discrimination

With respect to Plaintiff's federal and state employment discrimination claims, Defendant asserts, in essence, that Plaintiff has failed to (1) establish a *prima facie* case of race discrimination and (2) show that Defendant's legitimate, non-discriminatory reasons for her termination were pretextual. Defendant's arguments center on the three stage, burden-shifting framework first outlined in *McDonnell Douglas Corp. v. Green*, 411 U.S. 792 (1973), and further detailed in *Texas Dep't of Community Affairs v. Burdine*, 450 U.S. 248 (1981), *St. Mary's Honor Ctr. v. Hicks*, 509 U.S. 502 (1993), and *Reeves v. Sanderson Plumbing Prods., Inc.*, 530 U.S. 133 (2000). *See Thomas v. Eastman Kodak Co.*, 183 F.3d 38, 56 (1st Cir. 1999); *Benham v. Lenox Sav. Bank*, 118 F.Supp. 2d, 132, 141 (D. Mass. 2000). This three-step analysis essentially parallels that applicable to chapter 151B. *See Fite v. Digital Equip. Corp.*, 232 F.3d 3, 7 (1st Cir. 2000) ("In our view, federal and Massachusetts law are now generally aligned. . . .") (citing *Reeves* and *Abramian v. President & Fellows of Harvard College*, 731 N.E.2d 1075, 1084-86 (Mass. 2000)). *See also Joyal v. Hasbro, Inc.*, 380 F.3d 14, 16 (1st Cir. 2004) ("Massachusetts case law uses a burden-shifting device akin to federal law to force the employer to supply reasons for his action once an easily made *prima facie* case is established."). The court, therefore, will address Plaintiff's

state and federal claims together and refer principally to federal case law.[2]

    1.  *Prima Facie* Case

At the first stage of the burden-shifting analysis, a plaintiff must establish a *prima facie* case of discrimination by a preponderance of the evidence.  *See Thomas*, 183 F.3d 38, 56 (1st Cir. 1999).  To do so, she generally must show that (1) she is a member of a protected class, (2) she was qualified for the job, (3) she suffered an adverse employment action, and (4) the position remained open or was filled by a person with similar qualifications.  *See Kosereis v. Rhode Island*, 331 F.3d 207, 212-13 (1st Cir. 2003).  The First Circuit has variously "described the *prima facie* case as a 'small showing' that is 'not onerous' and is 'easily made.'" *Id.* at 213 (citations omitted).

Here, the parties essentially agree that Plaintiff has easily satisfied elements (1), (3) and (4): she is a member of a protected class who suffered an adverse employment action, *i.e.*, termination, and her job, presumably, either remained open or was filled by a person with similar qualifications.  Defendant, however, devotes considerable energy arguing that Plaintiff was not performing her job satisfactorily, element (2), in light of her failure to follow certain rules, her inability to get along with co-workers, and her insubordination.  Defendant's argument is quite persuasive.  The undisputed facts

---

[2]  In so doing, the court is mindful that the First Circuit, in a recent age discrimination case originating in this court, noted a "subtlety" between federal and Massachusetts law on the question of pretext.  *See Joyal*, 380 F.3d at 16 (observing that under federal law, evidence of discriminatory intent "may include inferences drawn against the employer if his alleged reason or reasons for the adverse action are shown to be 'pretextual'" whereas, under Massachusetts law, "a plaintiff *may* be able-- automatically and regardless of circumstances--to avoid a directed verdict and reach a jury if he or she proves that at least one of the reasons given by the defendant was pretextual") (emphasis in original).  That subtlety does not appear to be present here.

reveal Plaintiff was far from a model employee. However, given the ease with which *prima facie* cases are usually established, as well as Plaintiff's *pro se* status, the court will assume that Plaintiff has stated a *prima facie* case of discrimination and will move on to the second stage of the analysis. *See Benoit v. Tech. Mfg. Corp.*, 331 F.3d 166, 173 n.2 (1st Cir. 2003).

    2. Second Stage

At the second analytical stage, the burden shifts to the employer-defendant to produce a valid, nondiscriminatory reason for the adverse action. *See Thomas*, 183 F.3d at 56. Defendant easily has sustained that burden here.

Plaintiff does not deny that she was a probationary employee and, as such, could be terminated at any time during the introductory ninety day period. Plaintiff also does not deny that she violated certain rules, was involved in a series of confrontations with co-workers, refused to address Bailey at the November 27, 2002 meeting, abruptly exited that meeting, and made several disruptive and disrespectful remarks toward those who were training her. In short, there is no doubt that Defendant has presented "'reasons for its actions which, if believed by the trier of fact, would support a finding that unlawful discrimination was not the cause of the employment action.'" *Thomas*, 183 F.3d at 56 (quoting *Hicks*, 509 U.S. at 507).

    3. Third Stage

At the third stage of the sequential analysis, it becomes the plaintiff's burden to establish by a preponderance of the evidence "that the legitimate reasons offered by the defendant were not its true reasons, but were a pretext for discrimination." *Reeves*,

530 U.S. at 143 (citation and internal quotation marks omitted). "Although, in this posture, the burden-shifting framework itself becomes inconsequential, the court must still examine the [same] evidence that the parties adduced [during the first stage] in proceeding under the framework." *Mesnick v. Gen. Elec. Co.*, 950 F.2d 816, 825 n.6 (1st Cir. 1991). In the court's view, Plaintiff cannot meet her burden at this stage.

For one thing, there is no question that Defendant received numerous complaints characterizing Plaintiff as a disruptive employee who failed to follow a variety of rules. Nor is there any question that Defendant was entitled to use such information to make a good faith assessment of Plaintiff's performance. *See Mesnick v. General Elec. Co.*, 950 F.2d 816, 824 (1st Cir. 1991); *Matthews v. Ocean Spray Cranberries, Inc.*, 686 N.E.2d 1303, 1309 (Mass. 1997); *Pryor v. Holiday Inns, Inc.*, 517 N.E.2d 472, 475 (Mass. 1988). *See also Gray v. New England Tel. & Tel. Co.*, 792 F.2d 251, 256 (1st Cir. 1986) (employer's good faith belief is not categorically immune from review). It is also significant that Bailey was the individual who both hired Plaintiff and then chose to terminate her employment a short time later. *See, e.g., Wexler v. White's Fine Furniture, Inc.*, 246 F.3d 856, 866-67 (6th Cir. 2001) ("[W]here the hirer and firer are the same individual and the termination of employment occurs within a relatively short time span following the hiring, a strong inference exists that the discrimination was not a determining factor for the adverse action taken by the employer."); *Dziamba v. Warner & Stackpole LLP*, 778 N.E.2d 927, 934 (Mass. App. Ct. 2002) ("[I]t is improbable that the same persons who hire or promote someone already in [a protected class] will suddenly develop an aversion to [that class]."). It is similarly

9

obvious that Plaintiff was one of at least several African-Americans in Defendant's employ and that several of her squabbles were with African-American employees. At bottom, Plaintiff has pointed to nothing which might entitle a jury to find that Defendant based its decision upon Plaintiff's race.

Accordingly, the court concludes that Plaintiff will not be able to prove that Defendant's reasons for her termination were a pretext for unlawful discrimination. The court therefore will grant Defedant summary judgment with respect to Plaintiff's Title VII and chapter 151B employment discrimination claims.

B. Retaliation

To establish a claim for retaliation under Title VII and chapter 151B, a plaintiff must show that (1) she engaged in protected conduct, (2) she suffered some adverse action, and (3) a causal connection exists between the two. *See Mesnick*, 950 F.2d at 827; *Mole v. Univ. of Mass.*, 814 N.E.2d 329, 338-39 (Mass. 2004). Plaintiff cannot prove even the first element.

At best, Plaintiff appears to allege that she engaged in protected conduct when she complained about what she perceived to be Potter's racially-motivated comment. This allegation faces several insurmountable hurdles. First and foremost, there appears nothing racial about Potter's comment; he stated simply, albeit crudely, that her brother had an "ugly mug." Second, there is no evidence that Defendant condoned this remark. Rather, Defendant promptly investigated the incident, found it inappropriate (even though Potter said he was only joking), and reprimanded Potter. It is also significant that the comment was uttered by a co-worker, as opposed to a

supervisor. *See Silver v. KCA, Inc.*, 586 F.2d 138 (9th Cir. 1978) (holding that opposing co-worker's individual acts of discrimination does not constitute protected conduct under Title VII); *Folkerson v. Circus Circus Enters., Inc.*, 107 F.3d 754, 755 (9th Cir. 1997) (similar). *See also Little v. United Techs., Carrier Transicold Div.*, 103 F.3d 956, 959 (11th Cir. 1997) (plaintiff could not establish retaliation claim where his opposition to co-worker's alleged racial remarks were not attributable to employer). Finally, there is absolutely no evidence, other than Plaintiff's bald assertion, that Potter's comment initiated some type of race-based conspiracy. Accordingly, the court will grant summary judgment on Defendant's retaliation claims.[3]

C. Defamation

Plaintiff's defamation claim, arising from the nurses' internal letter, can also be dismissed in short order. Statements of pure opinion, like those expressed in the nurses' complaint, are not actionable as defamation. *See King v. Globe Newspaper Co.*, 512 N.E.2d 241, 243-44 (Mass. 1987); *Aldoupolis v. Globe Newspaper Co.*, 500 N.E.2d 794, 796 (Mass. 1986). It is also significant that the letter was neither authored by a manager nor published to a third party. *See Dorn v. Astra USA*, 975 F. Supp. 388, 396 (D. Mass. 1997). *Cf. White v. Blue Cross & Blue Shield of Mass., Inc.*, 809 N.E.2d 1034, 1038 (Mass. 2004) (rejecting notion that internal "self publication" in employment

---

[3] Conceivably, Plaintiff might also be alleging that she engaged in protected conduct at one of the meetings when, assertedly, she stated that "[she] Would going [sic] to seek outside help" and that she "had 6th [sic] months." Such a vague threat, however, obviously cannot constitute protected conduct under Title VII or chapter 151B. *See, e.g.,* 42 U.S.C. § 2000e-3(a) (specifically defining protected conduct as having "made a charge, testified, assisted, or participated . . . in an investigation, proceeding, or hearing under this title").

11

context can constitute defamatory "publication"). Finally, even if published to a third party, the letter would likely be subject to the "conditional privilege" enjoyed by employers who disclose defamatory information in order to serve their legitimate business interests. *See Foley v. Polaroid Corp.*, 508 N.E.2d 72, 94 (Mass. 1987) (citations omitted).

## IV. CONCLUSION

The court acknowledges Plaintiff's efforts in pursuing this matter *pro se*. Unfortunately for her cause, however, her claims cannot survive. For the reasons stated, therefore, Defendant's motion for summary judgment is ALLOWED.

IT IS SO ORDERED.

DATED: June 15, 2005

                                         /s/ Kenneth P. Neiman
                                       KENNETH P. NEIMAN
                                       U.S. Magistrate Judge